Good morning. We have four cases on the calendar this morning. A case from the Court of Federal Claims relating to Indian tribes, a case from the Court of Appeals for Veterans Claims, a Patent Office Re-examination case, and a Government Employee case which will be argued on the briefs, submitted on the briefs, and not argued today. So our first case is Council for Tribal Employment Rights v. United States, 2014-2003. Mr. Press. Thank you, Your Honor. May it please the Court, my name is Daniel Press. I'm the attorney for Appellant Plaintiff Counsel for Tribal Employment Rights. While Appellant believes that the trial court erred in a number of its findings, I'm going to focus the bulk of my time today on the issue of whether the court erred in finding that the two contract amendments for Floyd Abinishio. And I'm focusing on that for two reasons. One is we believe the trial court failed to properly apply the standards and the principles that this court has established, the very high standards and principles this court has established in finding a case for Floyd Abinishio. Before you get to that, can I just ask you a sort of process question, which is what's your actual claim here for? Is it for, it's not for the full contract I assume, but for the services you've already performed, is that right? It's for the remainder of the contract. The two contract amendments, one was for $950,000. CTR was paid approximately $700,000 of that. It performed one set of training, which it was not paid for, and was staffed up to perform the second training, but was not. We're asking for the contract, payment of the amount Yes, yes. So you've received that money? Yes, Your Honor. So now you're looking for the different? Yeah, $200,000 on contract amendment two and $300,000 on contract amendment six. So we're seeking basically full compliance with the contract. But you didn't do all of the work for the contract? No, Your Honor. We did part of the work that we were compensated for, but the client... I'm sorry, I didn't hear you. Oh, I'm sorry. We did part of the work that we were not compensated for, but in addition, CTR was staffed up to complete the rest of the work. The agency refused to meet its obligations. The staff was still having to be paid while waiting for the agency to comply, and as a result, the CTR was damaged, the full amount of the contract. It had staffed up based on the amount of money in the contract, and it actually paid out that amount. So it's seeking the full amount of the contract damage. In the provision 450BL, which requires that if there are multiple tribes involved, that each of the tribes provide consent, the reason for that is fair? Is that a fair assessment? That is correct, Your Honor. Well, doesn't this then go right to the heart of that statute that here the individual tribes did not give their consent? Your Honor, as we point out in our brief, in fact, no work was done on any reservation until the tribe I mean, the resolution at the time the contract amendments were executed, it attained it after CTR entered in the sub-grant agreement, but before it ever went on a reservation. So the full self-determination rights of the tribes were protected throughout this contract. That was simply, was that a provision in the work required that the sub-grantee obtain contract tribal resolutions before it set foot on any reservation. So the contract protected the self-determination rights, but because it was CTR that was performing the actual work, the way it was structured, it was CTR that was to get the resolutions before it started work, rather than the tribe getting the resolutions before it executed the contract. But isn't there a meaningful distinction between what the statute requires, which is a prerequisite to the letting or making of such contract or grant, and what happened here, which you say was done after the fact. Isn't that a significant distinction with regard to the principle we're trying to uphold, which is self-determination? Your Honor, we consider that to be, I would call it, it's a distinction, but it's not a distinction that had any practical real-life impact. No tribe self-determination rights were violated. So even though there is a difference, the difference is purely one of timing, but the policy that Congress implemented was tribes should be able to control who came on their reservation. The only difference was when it happened. But how can we ignore the language of the statute, which is pretty clear. It says, in any case where a contract is let or grant made to an organization to perform services benefiting more than one Indian tribe, the approval of each such Indian tribe shall be a prerequisite to the letting or making of such contract or grant. Your Honor, we're not asking you to ignore that, but the argument I'm raising is whether the court was correct in finding the contracts to be void ab initio, and to do that, it has to find one that was obvious and two that it was substantial. And substantial, based on the cases from this court, says there actually has to be a real-life impact, and there was no real-life impact. Secondly, the court says the violation has to be obvious. In this case, as the trial court found, the Bureau of Indian Affairs and the Office of Indian Economic Development, the two cognizant agencies for the Self-Determination Act, had a long-standing customary practice of not requiring resolutions on self-determination contracts to serve multiple tribes. So, what CTR did in this case was simply follow a long-standing customary practice of the agency, so we don't believe it was obvious to CTR. If you would ask any official of the BIA or IAD at any point in 2009 or before that, is there a requirement that you obtain resolutions on this kind of contract, every one of them would have said no, because that was the practice of the agency. I can't tell you how they reached that conclusion. In our brief, we lay out why we think 450BL doesn't apply to multi-tribal contracts, but the real question is, was this obvious and was it substantial, and when a contractor, not even a contractor, in this case a sub-grantee, who wasn't present when the contract was negotiated, when a sub-grantee simply follows a long-standing customary practice of an agency, we believe it's inappropriate to find that to be an obvious, which the court has decided, has interpreted as being, did the contractor, what was the violation? Is there a view based on the fact that you think there's some ambiguity in the contract in the statutory language, or you think it's irrelevant? I mean, let's assume there was something, you know, the contract, the statutory language is clear, right? And do you reach the fact that it was not obvious because you think there's ambiguity of the statute, or you think the provision is kind of inconsequential, and therefore it should not have been obvious to you, or what? No, it wasn't obvious to CTR because the cognizant agencies that Congress designated for interpreting this statute had concluded that it didn't apply to multiple contracts involving multiple tribes. That was a finding of the court. CTR was following the lead of the cognizant agencies in their interpretation of 450BL. Well, when you say their interpretation, that wasn't via regulations or rulings or anything like that, right? That was just done on a case that you're saying was their interpretation, that's based on the fact that what they had done a few previous contracts? It was a customary practice, and the agency did that for years. Nobody ever challenged it. Nobody ever questioned it. And that's why IED did it in this case. It had done it before in many, many other circumstances. Were they correct in their interpretation of the statute? We haven't found anything to explain why they concluded it wasn't obvious, but that was their practice. And while clearly your conclusion it was a deviation from the statute may be correct, the standard is, was it obvious? And our view is that a subgrantee should not be held responsible for challenging the interpretation of a statute by the cognizant agencies. It was not palpably illegal in CTR's eyes because they were following the lead of the cognizant agencies. We can save the rest of your time if you like. Okay. Thank you, Your Honor. Or you can use it. I just want to raise a couple of questions about the obvious. Again, CTR was not the contractor, and there's never been a case holding that a subgrantee or a subcontractor was required to not only know but influence the way a contract was issued. It was always the first time. Yes, Your Honor. We hope this will not be it. But also the language that this court has used is palpably illegal in the eyes of the contractor, and that's pretty strong language. Palpably means self-evident. It almost implies that the contractor knew what was going on and intended to somehow avoid the statute. That was not the case here. Again, CTR was a subgrantee and it was following the lead of the cognizant agencies. Secondly, the court has said that the deviation has to be substantial, and it's used the word egregious. And that, again, like palpable, is a very strong word. And we believe this was not egregious because no harm was done. The self-determination policies were fully, fully complied with. The tribes had the ability to say who would come on the reservation and who would not. The difference was timing. Finally, this court has set out three principles for determining when a court should find a case to be void ab initio. First, it should not find it to be void ab initio or disfavors finding it void ab initio when the contract has been substantially performed. And as I indicated, one contract was 90% performed and the second was 50% performed. Secondly, it particularly disfavors finding void ab initio when the contractor has no other avenue of relief. And in this case, the trial court shut out every avenue of relief that was contained in our complaint. As a result, CTR will never see the money for the work it actually performed or the remainder of the contract money that it had been promised. So this is a case that this court has said it strongly disfavors. Finally, the court says that in close cases, the benefit of the doubt should be given to the contractor. And as I indicated, in some ways this is a unique case because the contractor is not the party at the table. It's a subcontractor who wasn't involved in the negotiations. In fact, CTR never received a copy of the contract until this case was filed and we were able to obtain it through discovery. So CTR had no idea what was in the contract. So in some ways, it seems unfair to hold CTR responsible for a contract it had never seen and when it was simply following the lead of the two cognizant agencies that had followed this practice over a period of time. So for those reasons, we ask that the court reverse the trial court's conclusion that this case was void ab initio. Thank you. Thank you, Mr. Preskill.  Mr. Ashman. May it please the court. Your honors, the trial court's decision should be affirmed because the agreement at issue in this case violated a clear statutory prerequisite for the issuance of agreements under the Indian Self-Determination Act and that violation was plain and substantial. Mr. Ashman, these contracts were, these amendments were at least performed in part, correct? That's correct, your honor. What precipitated the government's change of position? The issue with the statute, the violation of the statute was identified during after litigation began. There was a dispute, a general dispute that arose between the parties while the contracts were ongoing that led to the claim, that led to the lawsuit. But then it was in response, in developing our response to the lawsuit that we identified that yes, there was a clear violation of the statute in the formation of these agreements. So otherwise the government had already paid a substantial portion of the contract, right? And this is the remaining part and you were disputing it with the contractor for reasons other than the issues that are before us now? Essentially, your honor, yes. As alleged in the complaint, under amendment number two of the nine training, the nine tribes that received training, seven, I believe eight training services were provided and there was a dispute over payment for one. The other seven were paid and for amendment number two, which had a total value of $500,000, as alleged in the contract, there was an initial payment of $200,000 that was received by the tribe. But then no actual, none of the tribes under amendment two, no services or training was actually afforded to the tribes under amendment number two. You're responding to the argument that the contracts have been substantially performed. Your answer is they've been substantially paid. There has been a substantial payment, your honor, and I believe the majority of the damage in that issue in the complaint are consequential type damages flowing from the breach. Delay, standby, you know, typical delay contract or delay type claims. There is one claim for outstanding services that had not been paid. Doesn't that hurt your argument? I mean, your friend says the standard is obvious and it couldn't have been obvious to anyone because the government had proceeded forever in not applying the statutory provision or reapplying it in a way other than it explicitly states. And you're standing before us and telling us, yeah, I guess that's right because nobody even woke up to the statutory provision until the suit was filed. Your honor, we acknowledge that this provision had not been enforced for whatever reason by the agency. However, we believe the standard for whether or not it is plain starts with the statute. It was the violation clear in reference to the statute. So the first issue, the first argument that's been raised is, is it ambiguous? Is that statutory language ambiguous? And we believe if the court concludes, as the trial court did, no, it is not ambiguous. If you read that, you know the requirement. And if the court comes to that conclusion that it was not ambiguous, that a reasonable contractor, government official, anyone reading that statute would know this is a requirement that had to be followed, then the standard of was the violation plain, we believe that's a no. But now that the government has figured it out, is this the standard which is being applied currently to contracts now? I mean, is it something that somebody finally figured out or noticed it was a statutory provision and perhaps their practice had been violating that for years? Has that now been applied below? Your honor, when this issue was identified in this case, it sparked a reevaluation of the contracting procedures at the agency. And as the trial court pointed out, I believe footnote 13, that then director of IED acknowledged that going forward that these trial resolutions had to be obtained before the contract was issued. Subsequently, there has not yet been any formal guidance or regulation expanding on the issue at this case, but it has caused a change in course of the agency. And if we approve the ruling that amendments were void of an issue, does the government intend to seek a refund of monies paid? No, your honor, we brought no affirmative claim in this case. We've raised this issue as a defense to the claims that were brought against the government. We have not sought a replenishment or a repleven of any funds that have been paid to either the tribe or CTR in this case. So we have no affirmative claim in that regard. Are there any claims pending in court below or potential claims that involve this same position that you know of? Not related to this contract, your honor, not related. We know of no other claims that have been brought since the government has identified this issue seeking some sort of re-challenging the validity of any other contracts as an issue prior to 2009 based on this. Your honor, one point I believe that has come up is the idea, was there a tangible harm? And the issue of the timing of when these resolutions were required to get. And we believe that there is a tangible harm. The purpose of the self-determination statute was to change the dynamic between the government and the Indians. To change the way the government, the relationship, to make it more of a commercial type relationship, more of an arm's length type relationship to promote self-determination and promote self-sufficiency among the Indian tribes. And we believe that this not following the tribal resolution requirement as a prerequisite changes that relationship of providing the tribe the right of prior approval, the right to control, not just who enters its jurisdiction, but the contracting process itself. So, for example, if a tribe, if the government enters into a contract with a tribal organization to provide services and the tribal organization is then to go out and identify tribes to give those services to. When the organization goes to that tribe, it says, okay, we have a contract. We have these services. If you want them, you have to go by these terms. These are the terms. Take it or leave it. So we believe that the dynamic of the relationship has fundamentally changed. With respect to Amendment 6, as I understand it, what you just described was contemplated, that the contracting party would then go out, identify various tribes, and that those tribes would then receive some funding through this program. But at the time the contract, the amendment was entered into, those tribes were not known, correct? Yes, Your Honor. How could they possibly have signed the amendment? Your Honor, the first question we would ask is, is the contemplated contract within the class of agreements that this statute was meant to cover? And Amendment 2, or Amendment 6, even though the tribes themselves were not identified, it was a contract to provide services for more than one tribe. So the statute clearly applies. And we believe the trial court got it correct that because the parties chose to craft an agreement that would otherwise be directly within the purview of the statute, because they chose to craft it in a way that created compliance impossible, that's not a way of relieving the obligation. So perhaps the amendment had to have built into it some sort of a clause that said, as a condition preceding to the actual funding, the tribes shall first be identified and signed or some such thing. That could very well have been a way to remedy the situation that was created, Your Honor. And finally, Your Honor, we just want to bring, on the issue of the awarding official authority, we want to bring one issue to the court's attention. There was an issue about the trial court noted that the limitation on the awarding official authority may not have been readily apparent in violation of a FAR statute. And there is a statute that we, unfortunately, did not raise in our brief that we want to bring to the court's attention. And that's 25 U.S.C. section 450J says that the federal acquisition statutes and regulations do not apply to self-determination agreements. So we wanted to bring that statute to the court's attention. Counsel, better late than never, but it is a bit late to be citing a statute as an important factor in our determination at oral argument. Yes, Your Honor. Your Honor, unless there's any other questions, for these reasons, we respectfully request that the court affirm the trial court's decision. Thank you, Mr. Raskin. Just as an aside, I would just mention that your brief, did you write the brief? Yes, Your Honor. The brief was replete with acronyms. And I would encourage and suggest that next time you not use acronyms, it's very difficult to follow. It would be much easier to use a short name rather than an acronym. Yes, Your Honor. Thank you, Your Honor. Mr. Prest, you used the bulk of your time, but you have a minute to reply. Thank you, Your Honor. Two quick points. One is in regard to Amendment 6 and the fact that it did contain that condition precedent. CTR was not allowed to, once the tribes were identified, it could not start work on those tribes' reservations until it got a resolution. So it met the criteria you set out. Where would I? It's in the scope of work to the contract, which is attachment A, I believe. Definition of terms, section A? I don't have the contract in front of me, but it's the scope of work to contract Amendment 6. And I think we've referred to it several times in our brief. Okay. Secondly, just while the court has been saying and the appellee has been saying that this was self-evident, the cognizant agencies that Congress assigned to interpret this act did not think it was self-evident. We never had a chance to depose them because the appellee did not raise this issue until very, very late in the case in its reply brief to the motion to dismiss. But we believe that some credence has to be given to the fact that the cognizant agency did not see this to be as obvious as the appellee is implying. Thank you. Thank you, Mr. Press. The case will be taken under advisement.